872 So.2d 1133 (2004)
STATE FARM MUTUAL AUTO. INSURANCE COMPANY and Millette Mackey
v.
Brad M. NOYES and Safeway Insurance Company.
No. 2002 CA 1876.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*1134 Carla S. Courtney, Matthew W. Pryor, Timothy E. Pujol, Percy, Pujol & Wall, Gonzales, for Plaintiffs-Appellees State Farm Mutual Automobile Ins. Co. and Millette Mackey.
Brad M. Noyes, Prairieville, Pro Se Defendant-Appellee.
Keith M. Borne, Borne & Wilkes, L.L.P., Lafayette, for Defendant-Appellant Safeway Insurance Company of Louisiana.
Before: PARRO, MCDONALD, and CLAIBORNE,[1] JJ.
PARRO, J.
The insurer of the named insured/defendant in a personal injury action appeals a judgment holding that the 2001 amendment to LSA-R.S. 32:900(L), which authorized the exclusion of a named insured from coverage, was not retroactive. For the following reasons, the judgment is affirmed.

Factual and Procedural History
On November 25, 1998, an automobile accident occurred when an intoxicated Brad M. Noyes (Noyes) rear-ended a vehicle driven by Millette Mackey (Mackey). The vehicle driven by Noyes was insured *1135 by Safeway Insurance Company of Louisiana (Safeway), and Mackey's vehicle was insured by State Farm Mutual Automobile Insurance Company (State Farm). On August 27, 1998, Safeway had issued a policy of automobile liability insurance to Noyes. However, Noyes had signed a named driver exclusion endorsement, which purported to exclude him from coverage under the Safeway policy covering his vehicle, because his driver's license had previously been suspended for driving while intoxicated.
State Farm paid Mackey for the property damage and bodily injuries she sustained in the accident. Subsequently, State Farm and Mackey filed suit against Safeway and Noyes, seeking to recover the amounts paid by State Farm, as well as Mackey's deductible. In light of the named driver exclusion endorsement executed by Noyes, Safeway filed a motion for summary judgment on the issue of coverage. The trial court denied Safeway's motion, finding that the 2001 amendment to LSA-R.S. 32:900(L), which allowed a named insured to exclude himself from coverage, was not retroactive. Eventually, a consent judgment for $17,438.62 was entered in favor of State Farm and Mackey, reserving Safeway's right to challenge the trial court's ruling on the retroactivity of the amendment to LSA-R.S. 32:900(L). The consent judgment was designated as a final judgment. Safeway's appeal followed.

Discussion
The sole issue on appeal is the retroactivity of the 2001 amendment to LSA-R.S. 32:900(L), which allowed a named insured to exclude himself from coverage under an automobile liability policy. In making this determination, we find it helpful to review the statutory and jurisprudential development relative to Louisiana automobile liability insurance law.
At the time of the accident in this case, LSA-R.S. 32:900(L) provided:
Notwithstanding the provisions of Paragraph B(2) of this Section, an insurer and an insured may by written agreement exclude from coverage any named person who is a resident of the same household as the named insured. (Emphasis added).
The fifth and second circuit courts of appeal were called on to determine whether the underscored language authorized a named insured to exclude himself from liability coverage under his policy by listing himself as an excluded driver. In Smyre v. Progressive Sec. Ins. Co., 98-518 (La.App. 5th Cir.12/16/98), 726 So.2d 984, 986, writ denied, 99-0139 (La.6/4/99), 745 So.2d 14, the fifth circuit concluded that the insurance statutes neither provided for or against a named insured excluding himself from coverage and held that the named insured on a liability policy could exclude himself from liability coverage. However, in Williams v. U.S. Agencies Cas. Ins. Co., Inc., 33,200 (La.App. 2nd Cir.5/15/00), 758 So.2d 1010, 1014, the second circuit determined that the provision excluding the named insured was contrary to public policy. The supreme court granted certiorari to resolve the conflict between the circuits on this issue. Williams v. U.S. Agencies Cas. Ins. Co., Inc., 00-1693 (La.9/29/00), 769 So.2d 1217.
The supreme court ultimately decided to abrogate Smyre and affirm Williams. Williams v. U.S. Agencies Cas. Ins. Co., Inc., 00-1693 (La.2/21/01), 779 So.2d 729. In reaching its decision, the court reviewed the statutory scheme and jurisprudential history. Pursuant to LSA-R.S. 32:861 and 862, every owner of a motor vehicle registered in Louisiana is required to obtain proof of security prior to registration and/or the issuance of a driver's license. LSA-R.S. 32:861(A)(1) allows *1136 an owner of a motor vehicle to comply with this requirement by obtaining an automobile liability policy that contains liability limits as defined by LSA-R.S. 32:900(B)(2). Although insurance companies are generally free to limit coverage in any manner they so desire, an insurer is not at liberty to limit its liability and impose conditions on its obligations that conflict with statutory law or public policy. Williams, 779 So.2d at 731. Furthermore, exclusionary provisions are to be strictly construed in favor of coverage. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, amended on other grounds, 95-0809 (La.4/18/96), 671 So.2d 915.
Louisiana's automobile insurance law requires that the named insured/vehicle owner be covered by liability insurance, and further requires omnibus coverage in favor of any person using an insured vehicle with the permission or consent of the named insured. See LSA-R.S. 32:900(B)(2).[2] Accordingly, Louisiana courts had historically held that the exclusion of a named driver who was a member of the insured's household was considered unenforceable on public policy grounds. Williams, 779 So.2d at 731. However, in 1992, the Louisiana legislature added subsection L to section 900, as an exception to the general rules of liability coverage.[3] The 1992 amendment expressly "overruled" the jurisprudence and thereafter validated an agreement between the insurer and the insured which excluded coverage of a particular named person who is a member of the insured's household. Williams, 779 So.2d at 731.[4] After the enactment of subsection L, the supreme court upheld named driver exclusions that excluded members of the named insured's household, such as the named insured's spouse or child, from coverage under the policy. See Bellard v. Johnson, 97-0909 (La.5/30/97), 694 So.2d 225. In Williams, 779 So.2d at 731, the issue before the supreme court was whether, by enacting the 1992 amendment to LSA-R.S. 32:900, the legislature intended to permit a named insured to exclude from coverage, not only members of his household, but also the *1137 person who owned the policy and the insured vehicle.
After reviewing the legislative discussions and comments surrounding the 1992 enactment of subsection L, the court observed that the purpose for the enactment was simply to make it clear that if someone was to be excluded in a household, it must be done by written agreement. Williams, 779 So.2d at 732. No support was found in the legislative comments or discussion for the proposition that the legislature intended that the named insured on the policy could be listed as an excluded driver under that same policy. Williams, 779 So.2d at 732.
The Williams analysis further noted that the Louisiana Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:851-1043, provides a mandatory, comprehensive scheme designed to protect the public from damage caused by motor vehicles. Marcus v. Hanover Ins. Co., Inc., 98-2040 (La.6/4/99), 740 So.2d 603, 605. The supreme court stated that its interest in protecting the driving public far outweighed an insured's desire to exclude himself from coverage in order to avail himself of a lower premium, stating that, "[t]o allow an insured to exclude himself from coverage and drive as an uninsured motorist, runs afoul of the overall purpose and intent of Louisiana's compulsory insurance law." Williams, 779 So.2d at 732. By its addition of LSA-R.S. 32:900(L), the legislature clearly did not intend that a tortfeasor could exclude for himself the mandatory liability coverage, at the expense of the injured person whom the state's insurance law is designed to protect. Accordingly, the court held that an automobile liability insurance policy could not exclude the named insured of a vehicle from coverage for the negligent operation of the insured vehicle. Williams, 779 So.2d at 732.
As a matter of statutory construction, the court further noted that LSA-R.S. 32:900(B)(2) clearly required that a policy provide coverage for "the person named therein," i.e., the named insured. In referring specifically to the exclusion of coverage "for any named person" who is a "resident of the same household as the named insured," subsection L clearly contemplated that the excluded person be distinct from the "named insured," yet still be a resident of his household, as distinguished from a permissive user who would be covered under LSA-R.S. 32:900(B)(2). The court recognized that a reading of LSA-R.S. 32:900 in its entirety revealed that a named insured is not in the same category as "any named person," whom subsection L authorized to be listed as an excluded driver under the policy. Williams, 779 So.2d at 733. Accordingly, the purported exclusion provision was held to be invalid as against public policy. Id.
Shortly after the Williams case was decided, the legislature passed 2001 La. Acts, No. 368. Section 2 of Act 368 expressly stated that its passage was intended to overrule Williams, 779 So.2d 729. Act 368 amended LSA-R.S. 32:900(L) to provide:
Notwithstanding the provisions of Paragraph B(2) of this Section, an insurer and an insured may by written agreement exclude from coverage the named insured and the spouse of the named insured. The insurer and an insured may also exclude from coverage any other named person who is a resident of the same household as the named insured.... (Emphasis added).
This revision to subsection L of section 900 clearly states that an automobile liability insurance policy may exclude the named insured of a vehicle and the spouse of the named insured from coverage.
Since the relevant event in this case occurred before the effective date of *1138 Act 368, the parties argue as to the retroactive application of the 2001 amendment to LSA-R.S. 32:900(L). Safeway takes the position that the amendment is merely interpretive of existing law, based on the legislature's express overruling of the incorrect Interpretation in the Williams case; therefore, it maintains that the amendment applies retroactively to give effect to the endorsement to exclude Noyes from coverage. On the other hand, State Farm urges that the trial court was correct in refusing to apply the amendment retroactively, since the amendment is substantive in nature and, therefore, can only be applied prospectively. With this background in mind, we must determine whether the additional language in LSA-R.S. 32:900(L) is to be given retroactive effect.
The legislature is free, within constitutional confines,[5] to give its enactments retroactive effect. LSA-R.S. 1:2 provides that "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." LSA-R.S. 1:2, however, has been construed as co-extensive with LSA-C.C. art. 6. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992). Article 6 codifies the general rule against retroactive application of legislative enactments and the exceptions jurisprudentially engrafted onto it, providing:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
The jurisprudence has construed the general proscription against retroactive effect of laws as applying only to substantive, as opposed to procedural or interpretive, laws. St. Paul, 609 So.2d at 816.
In determining whether a newly-enacted provision is to be applied prospectively only, or may also be retroactive, LSA-C.C. art. 6 requires a two-fold inquiry. First, the court must determine whether the amendment to the statute expresses legislative intent regarding retrospective or prospective application. Keith v. U.S. Fid. & Guar., Co., 96-2075 (La.5/9/97), 694 So.2d 180, 183. If no such intent is expressed, the enactment must be classified as either substantive, procedural, or interpretive. Keith, 694 So.2d at 183. Furthermore, even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations or disturb vested rights. If it does so, then in spite of legislative pronouncements to the contrary, the law is substantive, rather than procedural or interpretive. Crooks v. Metropolitan Life Ins. Co., 00-0947 (La.App. 3rd Cir.1/17/01), 779 So.2d 966, 970, vacated on other grounds, 01-0466 (La.5/25/01), 785 So.2d 810.
Act 368 does not expressly provide for retroactive application, nor has the legislature expressly declared that the act is interpretive or provided for an effective date that would be indicative of retroactive application of the amendment. Cf. Cole v. Celotex Corp., 599 So.2d 1058, 1064-1065 (La.1992); Peak v. Tuscaloosa Commerce Bank, 96-1258 (La.App. 1st Cir.12/29/97), 707 So.2d 59, 62-63; see also Pierce v. Hobart Corp., 939 F.2d 1305, 1310 (5th Cir.1991). Therefore, this court must classify the enactment as either substantive, *1139 procedural, or interpretive. Neither party in this case contends that the amendment at issue is merely procedural; hence, the narrow inquiry before us is whether the amendment is interpretive and thus retroactive, or substantive and thus prospective.[6]
Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its initial enactment. It is the original statute, not the interpretive one, that establishes the rights and duties. St. Paul, 609 So.2d at 817; Ardoin v. Hartford Accident and Indem. Co., 360 So.2d 1331, 1338 (La. 1978). When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retrospective effect because it does not change, but merely clarifies, pre-existing law. St. Paul, 609 So.2d at 817.
In determining whether the amendment is substantive or interpretive, we are mindful that in section 2 of Act 368, the legislature indicated its intent to overrule the Williams decision.[7] The rationale underlying retroactive application of such an enactment is that a legislative overruling of a judicial decision does not change the law, but corrects a particular judicial interpretation of it and re-establishes or clarifies what was supposed to be the true meaning of the interpreted law. St. Paul, 609 So.2d at 818-819, quoting Symeon Symeonides, Property, 46 La. L.Rev. 655, 691 (1986). However, as noted by the supreme court, the suggested distinction between interpretive legislation "clarifying," and substantive legislation "amending" or "changing," existing law is an obscure one. St. Paul, 609 So.2d at 819. There is no bright line between substantive laws which change existing standards and interpretive laws which change existing standards by redefining and returning to their ostensible "original" meaning. Id.
It must be noted, however, that statutory interpretation and the construction to be given to legislative acts is a matter of law and rests with the judicial branch of government. Bourgeois v. A.P. Green Industries, Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, 1260. As pointed out by Justice Lemmon in his assignment of additional reasons to the majority opinion in Bourgeois,
True interpretive legislation occurs when the Legislature, upon realizing that a previously enacted law contains an ambiguity or an error, amends the prior law to correct the ambiguity or error before the law has been judicially interpreted. However, after the judicial branch performs its constitutional function of interpreting a law, and the Legislature disagrees with that interpretation, a new legislative enactment is a substantive change in the law and is not an interpretive law, because the original law as interpreted by the judicial branch, no longer applies. (Footnotes omitted; emphasis in original).
Bourgeois, 783 So.2d at 1261 (Lemmon, J., assigning additional reasons).
*1140 Ultimately, the supreme court has defined interpretive legislation as that which "determine[s] the meaning of existing laws." St. Paul, 609 So.2d at 820, citing Ardoin, 360 So.2d at 1338. It may be that the legislature intended that the 1992 amendment create an exception to the general rule of coverage found in LSA-R.S. 32:900(B)(2) that was broad enough to allow an exclusion of coverage as to the named insured, as well as to other named persons residing in his household. However, it did not do so and the supreme court determined that the exception could not be interpreted to do so. Until the 2001 amendment to LSA-R.S. 32:900(L), an insurer was not at liberty to limit its liability with respect to the named insured, under the clear wording of LSA-R.S. 32:900(B)(2), which required the vehicle owner's policy of liability insurance to insure the person named in the policy. Any attempt to exclude the vehicle owner and named insured from liability coverage prior to the enactment of the 2001 amendment was contrary to statutory law and public policy. Hence, the amendment is substantive, in that it represents a distinct change in the rights and obligations of the parties. Under LSA-C.C. art. 6 and LSA-R.S. 1:2, such a substantive change in the law cannot be applied retroactively, and the trial court was correct in so finding.

Decree
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Safeway Insurance Company of Louisiana.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] LSA-R.S. 32:900(B)(2) reads, in pertinent part:

B. Such owner's policy of liability insurance:
* * *
(2) Shall insure the person named therein and any other person, as insured, using any such vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident, and,
(b) Subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and
(c) Ten thousand dollars because of bodily injury to or destruction of property of others in any one accident.
(d) An owner may exclude a named person as an insured under a commercial policy if the owner obtains and maintains in force another policy of motor vehicle insurance which provides coverage for the person so excluded which is equal to that coverage provided in the policy for which the person was excluded. The alternative coverage is required for both primary and excess insurance. (Emphasis added).
[3] This amendment was in effect at the time of the accident in this case.
[4] The purpose of this provision is to allow the named insured the option of paying a reduced premium in exchange for insurance that affords no coverage while a covered vehicle is operated by the excluded driver. Joseph v. Dickerson, 99-1046, 99-1188 (La.1/19/00), 754 So.2d 912, 917.
[5] LSA-Const. art. I, § 23 prohibits ex post facto laws and laws impairing the obligations of contracts. Also, no law can be retroactively applied so as to divest a party of a vested right, as this would violate the due process clause of the state and federal constitutions. These constitutional issues, however, arise only when retroactive effect is given to a new law. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 n. 11 (La.1992).
[6] While the jurisprudence had also recognized a fourth category, remedial laws, the legislature intentionally left this category out of LSA-C.C. art. 6 because of the multiplicity of meanings it had been given: "[a] remedial law may be procedural, interpretive or substantive." LSA-C.C. art. 6, Official Comment (d); St. Paul, 609 So.2d at 817 n. 16.
[7] The use of the expression "legislatively overrule" perhaps clouds the issue. To say that a judicial decision was "legislatively overruled" is a descriptive expression for the legislature changing the law as previously interpreted by the court. St. Paul, 609 So.2d at 819.